UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JASON PAUL CHESTER,<br><br>                        Plaintiff,<br><br>        v.<br><br>UNIVERSITY OF WASHINGTON, et al.,<br><br>                        Defendants. | CASE NO. C11-5937 BHS<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR ATTORNEY FEES |

This matter comes before the Court on Defendants' motion to dismiss Plaintiff's

42 U.S.C. § 1983 claims and all claims against individual Defendants (Dkt. 21); and

Plaintiff Jason Chester's ("Chester")  motion for attorney fees. Dkt. 23.  For the reasons

stated herein, the Court has considered the pleadings filed in support of and in opposition

to the motions and the remainder of the file and hereby grants in part and denies in part

Defendants' motion and denies Chester's motion.

## I. FACTUAL & PROCEDURAL HISTORY

On November 16, 2011, Chester filed a Complaint in the above-captioned matter

on November 16, 201l. Dkt. 1-1.  He subsequently filed a First "Amended" Complaint.

Dkt. 42.  Chester alleges causes of action against the University of Washington

("University") as a Defendant, along with University employees Cedric Howard, Jeri Carter, Nancy Cook, Hope Stout, Darren Bailey, and Laura Delval (collectively "Defendants"). *Id.* The University does not dispute that the named individuals were acting within their employment during all times. Dkt. 21. In Chester's initial complaint, he alleges causes of action under the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("RA"), and 42. U.S.C. § 1983 claims based on violations of the First, Fourth and Sixth Amendments to the United States Constitution. Dkts. 1-1, 10 and 11.

On March 30 and 31, 2012, Chester made motions to amend his complaint (Dkts. 10 and 11), attaching to those motions what he termed "Supplemental Proposed Complaint[s]." Dkt. 10-2 and 11-3. On April 19, 2012, the Court issued an order denying Chester's motion to amend his complaint as moot because, at that time, he could amend without leave of Court. Dkt. 18.

On May 17, 2012, the University and individually named Defendants filed the instant motion to dismiss Chester's 42 U.S.C. § 1983 claims and all claims against individual Defendants. Dkt. 21. On May 26, 2012, Chester filed a response in opposition to Defendants' motion. Dkt. 23. On June 8, 2012, the Defendants filed a reply. Dkt. 27. On June 19, 2012, Chester filed an amended complaint entitled First "Amended" Complaint (Dkt. 42), alleging breach of contract and causes of action under the ADA, RA, Washington Law Against Discrimination, and § 1983, based on an alleged violation of the Sixth Amendment. The Court accepts this document (Dkt. 42) as Chester's complaint. Because Chester's first amended complaint does not contain allegations

1 involving his First and Fourth Amendment rights, the Court does not address the portions

2 of the Defendants' motion for dismissal of those claims.

3 **II. DISCUSSION**

4       Defendants argue dismissal is appropriate for the majority of Chester's claims

5 because he has asserted non-cognizable and duplicative causes of action under the ADA

6 and the RA against individual Defendants.  Additionally, Defendants seek dismissal

7 arguing the Eleventh Amendment bars Chester's 42 U.S.C. § 1983 claims against state

8 Defendants, and because Chester otherwise Sixth Amendment claim must fail as a matter

9 of law.  Dkt. 21 at 4-5.

10       In his response brief, Chester "objects" to Defendants' motion to dismiss because

11 it contains mere recitations of the law based on inferences and nothing more. Dkt. 23 at 2.

12 He claims that "each and every allegation of discrimination … is factual and true," and

13 defendants "do not directly cite examples from Plaintiff's complaint or cite any specific

14 examples whatsoever."  *Id.*  Chester further opposes Defendants' motion because

15 "[ m]ost, all issues and arguments too, conflict with the Federal Rules of Civil Procedure"

16 and common law.  *Id.*  Additionally, he maintains that Defendants brought the motion to

17 "prevent justice," and he makes a motion for attorney fees.  *Id.*  Chester also maintains

18 that *pro se* pleadings are held to less stringent standards than ones drafted by practicing

19 attorneys. Dkt.  23 at 4.

20       The Court acknowledges Chester's *pro se* status and construes his pleadings

21 accordingly.  While the Court has considered Chester's objections and other arguments

22 made in his response, it finds they lack merit.  Defendants' motion is based on the

1    argument that Chester's complaint fails to assert a cognizable legal theory supported by

2    alleged facts under which Chester may proceed.  When Defendants' arguments are not

3    supported by the law, the Court makes note, if it deems necessary.  The Court finds no

4    reason to grant Chester attorney fees.

5    **A.    Standard for Fed. R. Civ. P 12(b)(6) Dismissal**

6            A Rule 12(b)(6) dismissal is proper when the complaint fails to allege either a

7    cognizable legal theory or absence of sufficient facts alleged under a cognizable legal

8    theory.  *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir.

9    2010).  Where the complaint reveals on its face that defendant lacks the capacity to be

10   sued, a Rule 12(b)(6) motion will lie.  *See De Saracho v. Custom Food Machinery, Inc.*,

11   206 F.3d 874, 878 (9th Cir. 2000).   To survive a motion  to dismiss, a  complaint must

12   contain sufficient factual matter to state a facially plausible claim to relief.  *Ashcroft v.*

13   *Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).  In essence, as the

14   Ninth Circuit has stated, "[t]he issue is not whether a plaintiff's success on the merits is

15   likely but rather whether the claimant is entitled to proceed beyond the threshold in

16   attempting to establish his claims."  *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir.

17   l978).  The Court must determine whether or not it appears to a certainty under existing

18   law that no relief can be granted under any set of facts that might be proved in support of

19   plaintiffs' claims.  Again, "[d]ismissal can be based on the lack of a cognizable legal

20   theory or  the absence of sufficient facts alleged under a cognizable legal theory."

21   *Balistreri v. Pacifica Police Dep 't*, 901 F.2d 696, 699 (9th Cir. 1990).

22

1    **B.    No Individual Liability under the ADA**

2         Title II (Public Services) of the ADA, which applies to public universities,

3    provides that "[n]o qualified individual with a disability shall, by reason of such

4    disability, be excluded from participation or be denied the benefits of the services,

5    programs, or activities of a public entity, or be subjected to discrimination by any such

6    entity." 42 U.S.C. § 12132.  A potential defendant under the statute is any "public entity"

7    which includes, among others, "any State or local government"; and "any department,

8    agency, special purpose district, or other instrumentality of a State or States or local

9    government." 42 U.S.C. § 12131.

10        While the Ninth Circuit has not squarely addressed the issue in a published

11   opinion,[1] district courts, including those within the Ninth Circuit have determined that a

12   public actor may not be sued in his or her individual capacity under Title II of the ADA.

13   *Thomas v. Nakatani,* 128 F. Supp. 2d 684 (D. Hawaii 2000) (no individual capacity suit

14   under Title II of the ADA);  *A.B. ex rel. B.S. v. Adams-Arapahoe 28J School Dist.*, 831 F.

15   Supp. 2d 1226 (D. Colo. 2011) (no individual liability under either Title II of the ADA or

16   the RA).  *Becker v. State of Oregon, ODOC, et al.*, 170 F. Supp. 2d 1061,1066 (D. Or.

17   _____

18        [1] The Court does not rely on unpublished Ninth Circuit decisions to support its finding.
     However, it notes two unpublished Ninth Circuit cases holding that no individual liability exists
19   under either Title II of the ADA or § 504 of the RA.  *See, e.g., Burgess et al. v. Carmichael*, 37
     Fed. Appx. 288 (2001) (affirming district court's dismissal of plaintiff's claims against
20   individual defendants reasoning plaintiffs may sue only "public entity" for such violations, not
     government officials in their individual capacities) *(citing Vinson v. Thomas*, 288 F.3d 1145,
21   1156 (9th Cir. 2002); *Young v. Lehaman*, 171 Fed. Appx. 625 (2006) (claims against defendants
     under Title II of the ADA and the RA in their individual capacities are foreclosed) *(citing Vinson
22   v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002), and *Alsbrook v. City of Maumelle*, 184 F.3d
     999, 1005 n. 8, 1011-12 (8th Cir. 1999) (en banc).

1   2000) (finding a potential defendant is any "public entity" and individual defendants

2   cannot be sued in their individual capacities under Title II).

3       Additionally, in *Alsbrook v. City of Maumelle*, 184 F.3d 999 (1999), the Eighth

4   Circuit has ruled on the issue, reasoning and finding the following:

5       It is unclear from the complaint whether Alsbrook is asserting an ADA claim
    against the commissioners in their individual capacities. To the extent that he
6   is, we agree with the panel opinion's conclusion that the commissioners may
    not be sued in their individual capacities directly under the provisions of
7   Title II. Title II provides disabled individuals redress for discrimination by a
    "public entity." *See* 42 U.S.C. § 12132.  That term, as it is defined within the
8   statute, does not include individuals.  *See* 42 U.S.C. § 12131(1);  *see also*
    *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19, 100 S.Ct. 242,
9   62 L.Ed.2d 146 (1979) ("[I]t is an elemental canon of statutory construction that
    where a statute expressly provides a particular remedy or remedies, a court must
10  be chary of reading others into it.").

11  184 F.3d at 1005.

12      The Court finds that, consistent with language of the statute, specifically the term

13  "public entity," district court rulings and Eighth Circuit precedent, Chester's Title II

14  ADA claims against Defendants in their individual capacities should be dismissed.

15  Defendants in their official capacities remain.

16  **C.    No Individual Liability under the Rehabilitation Act**

17      29 U.S.C. § 795  ("section 504") states in pertinent part:

18      No otherwise qualified individual with a disability in the United
    States … shall, solely by reason of his or her disability, be excluded from
19  the participation in, be denied the benefits of, or be subjected to
    discrimination under any program or activity receiving Federal financial
20  assistance.

21      To survive a motion to dismiss, Chester's *prima facie* case must set out four

22  elements: "(1) that [he] is a 'handicapped individual' under the Act, (2) that [he] is

1   'otherwise qualified' for the [benefit] sought, (3) that [he] was [discriminated against]

2   solely by reason of [her] handicap, and (4) that the program or activity in question

3   receives federal financial assistance." *Johnson by Johnson v. Thompson,* 971 F.2d 1487,

4   1492 (10th Cir. 1992) (quoting *Strathie v. Dep't of Transp.,* 716 F.2d 227, 230 (3d Cir.

5   1983)), *cert. denied,* 507 U.S. 910, 113 (1993).

6        Although Chester's amended complaint does allege that "Defendants as a *public*

7   *entity*" are recipients of federal funds (Dkt. 42 at 8, 9, and 11) (emphasis added), his

8   complaint does not allege that any Defendants in their individual capacities are recipients

9   of federal funds, only that Defendants as a "public entity" are. *Id.*  Defendants as "public

10   entit[ies]" could reasonably be construed as Defendants in their official capacities, but

11   that phrase cannot reasonably be interpreted to mean Defendants in their individual

12   capacities.  Chester has not pled facts to implicate Defendants in their individual

13   capacities under section 504.  Additionally, because Defendants in their individual

14   capacities cannot receive federal funding such that they are subject to liability under

15   section 504, no such facts could be sufficiently pled.

16        In *United States Dept. of Transp. v. Paralyzed Veterans of America,* 477 U.S. 597,

17   605 (1986), the Supreme Court focused on who could and who could not be held liable as

18   recipients of federal funds under section 504. "Congress limited the scope of § 504 to

19   those who actually 'receive' federal financial assistance because it sought to impose §

20   504 coverage as a form of contractual cost of the recipient's agreement to accept the

21   federal funds."  477 U.S. at 605.  By accepting the funds, one accepts the obligations that

22   go along with it, namely, the obligation not to exclude from participation, deny benefits

1    to, or subject to discrimination an otherwise qualified handicapped individual solely by

2    reason of her handicap.  Only by declining the federal financial assistance can one avoid

3    this obligation. "By limiting coverage to recipients, Congress imposes the obligation of §

4    504 upon those who are in a position to accept or reject those obligations as a part of the

5    decision whether or not to 'receive' federal funds." *Id.* at 606.

6          Given the Supreme Court ruling, while Defendants in their official capacities

7    could receive federal funding subjecting them to section 504 liability, the Defendant

8    employees in their individual capacities cannot receive such funds; therefore, Chester

9    could not meet the fourth element required to make out a *prima facie* case under section

10   504 .

11          Additionally, as Defendants point out, although the Ninth Circuit has not directly

12   addressed the issue of whether section 504 itself provides for individual capacity suits

13   against public officials, other circuit courts of appeal as well as district courts have

14   determined that section 504 does not provide for such suits.  *See* Dkt. 21 at 6 and footnote

15   1 of this order.  *See, e.g.*, *Garcia v. S.U.N.Y. Health Scis. Ctr.*, 280 F.3d 462 (2nd Cir.

16   2001) (holding "insofar as Garcia is suing individual defendants in their individual

17   capacities, neither Title II of the ADA nor §504 of the Rehabilitation Act provides for

18   individual capacity claims against state officials") (case citations omitted); *Adams-*

19   *Arapahoe*, 831 F. Supp. 2d at 1254 (no individual liability under either Title II of the

20   ADA or the RA).  The Court finds these cases persuasive and adopts their holding.

21

22

1    For the foregoing reasons, Chester's RA claims against Defendants in their

2  individual capacities are dismissed.  Claims against Defendants in their official capacities

3  remain.

4  **D.    Claims against Defendants in their Official Capacities**

5    Defendants argue that claims against all individual Defendants in their official

6  capacities should be dismissed because they are essentially claims against the

7  government entity itself.  Dkt. 21 at 7-8.  However, Defendants also maintain that there is

8  no *Monell* theory of liability applicable to this case, and the Court agrees.  *See* Dkt. 21 at

9  9 and footnote 2 of this order.  The cases Defendants have cited for the proposition that

10  official capacity suits should be treated as suits against the entity itself, involve municipal

11  liability, which is inapplicable to this case.  Therefore, as articulated above, the Title II

12  and RA claims against individual Defendants in their official capacities remain.

13  **E.    42 U.S.C. § 1983 Claims Against the University and University Employees**[2]

14    The University argues that Chester's claims under 41 U.S.C. § 1983 are barred by

15  the Eleventh Amendment; that Chester has failed to allege sufficient facts to support a

16  cognizable First Amendment claim; that his Sixth Amendment claim, involving criminal

17  prosecutions, must fail as a matter of law; and that Chester fails to allege facts that

18  support a Fourth Amendment claim.  However, as the Court indicated at the beginning of

---

[2] Based on Chester's prior complaint, Defendants argue that there can be no individual liability under 42 U.S.C. § 1983 based on violation of the ADA and the RA.  Dkt. 21 at 6–7. While it appears that in Chester's first amended complaint he has abandoned any such allegation, to the extent that he has not, the Court agrees with the Defendants. *Vinson v. Thomas,* 288 F.3d 1145, 1155  (9th Cir. 2002) (holding a plaintiff cannot bring an action under § 1983 against a state defendant in his individual capacity to vindicate rights created under Title II or section 504 of the RA; those claims are barred by the comprehensive remedial schemes of those acts).

1  this order, Chester's first amended complaint does not allege First or Fourth Amendment

2  causes of action.  Therefore, we address Defendants' argument regarding only the

3  Eleventh and Sixth Amendments.

4        **1.**     **Eleventh Amendment**

5        The Eleventh Amendment bars suits against the state or its agencies for all types

6  of relief absent unequivocal consent by the state. Dkt. 21 at 8, n.7 (*citing Krainski v.*

7  *Nevada ex rel. Bd. of Regents of Nevada System of Higher Educ.*, 616 F.3d 963, 968 (9th

8  Cir. 2010), *cert. denied*, 131 S. Ct. 1678) (dismissing claims against University of Las

9  Vegas Nevada under Eleventh Amendment).  The Eleventh Amendment jurisdictional

10 bar applies regardless of the nature of relief sought and extends to state instrumentalities

11 and agencies. *Id*. (citing *see Papasan v. Allain,* 478 U.S. 265, 276 (1986).  Thus, the

12 University contends, Chester's claims against the University of Washington are barred by

13 the Eleventh Amendment.  Dkt. 21 at 8.  The Court agrees.

14       Additionally, the Eleventh Amendment also shields state officials from official

15 capacity suits.  *Krainski*, 616 F.3d 963, 968 (citing *see Will v. Mich. Dep't of State Police,*

16 491 U.S. 58, 71 (1989) (clarifying that suits against state officials in their official

17 capacity are no different from suits against the state itself).  Therefore, the Defendants

18 argue that Chester's claims against individuals in their official capacities[3] should also be

19 dismissed.  Again, the Court agrees.

20 ─────────────────

21       [3] The University also argues that Chester has failed to allege an unconstitutional policy,
practice of custom of the University to satisfy the *Monell v. Dep't of Social Servs. of N.Y.*, 436

22 U.S. 658, 690 n. 55 (1978).  Dkt. 21 at 9. According to the University, even if Chester had

1    As the Defendants note, they are not seeking dismissal of Chester's ADA and RA

2  claims against the University but rather his constitutional claims.  Dkt. 21 at 2 n. 1.  The

3  University acknowledges that the Eleventh Amendment does not bar claims brought

4  under the ADA or the RA, and thus it is not seeking dismissal of those claims under the

5  Eleventh Amendment.  Dkt. 21 at 8, n.7 (*citing Clark v. California*, 123 F. 3d 1267, 1269

6  (9th Cir. 1997)) ("Congress has unequivocally expressed its intent to abrogate State's

7  immunity [from suit in federal court] under both the ADA and the Rehabilitation Act.").

8       **2.    Sixth Amendment**

9    The text of the Sixth Amendment reads:

10       In all criminal prosecutions, the accused shall enjoy the right to a speedy
         and public trial, by an impartial jury of the State and district wherein the
11       crime shall have been committed, which district shall have been previously
         ascertained by law, and to be informed of the nature and cause of the
12       accusation; to be confronted with the witnesses against him; to have
         compulsory process for obtaining witnesses in his favor, and to have the
13       Assistance of Counsel for his defense.

14  *U.S. Const. Amend. VI*.  Defendants correctly argue that the Sixth Amendment is utilized

15  in criminal settings (Dkt. 21 at 10), as the plain language at the beginning of the

16  amendment establishes – "In all criminal prosecutions…."  *Id*. As the Defendants

17  contend, the Sixth Amendment ['s]… reach is only to protect the attorney-client

18  relationship from intrusion in the *criminal setting*. *Id*. (*citing Wolff v. McDonnell*, 418

19

20  alleged such facts the "Supreme Court has expressly declined to extend even *Monell's* theory of
    municipal liabilities under §1 983 to state entities, like the University.  Dkt. 21 at 9.  *Krinski*, 616
21  F.3d at 968; *Will*, U.S. 58 at 70-71.  Accordingly, the University argues that Chester may not
    bring an action against the University or its employees in their official capacities under *Monell*.
22  *Id*. The Court agrees.

U.S. 539 (1974) (in civil rights action challenging administrative procedures and practices at Nebraska penal complex, plaintiff alleged a violation of his Sixth Amendment rights and court held the amendment was applicable in criminal settings).  In this case, Chester's Sixth Amendment claim must necessarily fail.

### III. ORDER

Therefore, it is hereby **ORDERED** that Chester's motion for attorney fees is **DENIED** (Dkt. 23), and  Defendants' motion to dismiss (Dkt. 21) is **GRANTED** in part and **DENIED** in part as follows:

1.  Defendants' motion is **GRANTED** and Title II claims against Defendants in their individual capacities are **DISMISSED**.

2.  Defendant's motion is **GRANTED** and section 504 claims against Defendants in their individual capacities are **DISMISSED**.

3.  Defendants' motion is **DENIED** as to the Title II claims against Defendants in their official capacities.

4.  Defendants' motion is **DENIED** as to the Section 504 claims against Defendants in their official capacities.

5.  Defendants' motion is **GRANTED**, and Chester's 42 U.S.C. § 1983 claims, including his Sixth Amendment Claim, are **DISMISSED**.

Dated this 21st day of August, 2012.

BENJAMIN H. SETTLE
United States District Judge